F. E. McCray et al *v.* Lyle B. Marshall et ux

5-4063                                                      410 S. W. 2d 595

Opinion delivered January 23, 1967

*E. L. Schieffler,* for appellant.

*Hall, Purcell, Boswell & Tucker,* for appellee.

Conley Byrd, Justice. Involved in this appeal is the title to 2.4 acres of land described as ''all of the E½ of NW¼ NE¼ Sec. 3, T-2-S, R-15-W, lying West of Old Hwy. No. 70.'' The trial court quieted title to the 2.4 acres in appellees, Mr. and Mrs. Lyle B. Marshall, as the owners by adverse posession. For reversal the appellants, who are the heirs at law of Mr. and Mrs. W. N. McCray and are the record title holders, relied upon the following points:

1.  Appellees did not come into equity with clean hands.

2.  The record shows that appellees were not claiming hostile to the whole world because they permitted a house to be built on the area by Ouletta Enterprises without objection.

3.  Appellees were holding same by mistake.

4.  The trial court erred in admitting a photograph.

The record shows that the appellants' decedents acquired title to the lands in question by deeds in 1914 and 1918. Mr. and Mrs. W. N. McCray died while appellants were in their teens, over forty-five years ago. Appellants testified that they visited the lands from time to time and that same had never been fenced. Mr. Marshall testified that when he purchased his 180-acre farm in 1950 the lands in question were fenced in with his farm, that he thought the lands were part of the land which he purchased, and that he had claimed all the way to the highway since he had taken possession of his farm. Neighbors living in the area who had been familiar with the lands for more than thirty years, testified that the strip of land in question had been fenced with the farm purchased by Mr. Marshall and that the lands had always been considered a part of the farm owned by Mr. Marshall.

This particular controversy developed in 1962 when a survey was made for a county road to the river running west from Old Highway No. 70, now Highway No. 5. The surveyor at that time informed Mr. Marshall that he had some "lost land" between his and the highway —i. e., the land was not on the tax books. Thereafter Mr. Marshall had it placed on the tax books for the tax year of 1962 and subsequently offered to give appellants $300 for a quitclaim deed to clear up his record title. It was Mr. Marshall's thinking that it would be cheaper to pay $300 for a quitclaim deed than it would be to bring an action to quiet his title.

Some time before this action was filed, Ouletta Enterprises, Inc. began construction of a house on a portion of the 2.4 acres which had been platted as Lot 1, Bel Monte Estates Subdivision. However, Ouletta Enterprices, Inc. was not made a party to the litigation.

Appellants' argument that the Marshalls are barred by the Clean Hands Doctrine is apparently based upon certain statements allegedly made by Mr. Marshall on the telephone when he tried to purchase the outstanding record title for $300, with reference to tax payments since 1950; and upon the further premise that he knowingly permitted Ouletta Enterprises to build a house on the premises without objection. There is nothing in the record to show that the appellants were misled in any way by the alleged statements, nor is there anything to show how appellants are injured by Mr. Marshall's alleged conduct toward Ouletta Enterprises. Consequently we hold this contention without merit.

The second point urged, that the Marshalls were not making a hostile claim to the lands against the whole world, is based upon the testimony of a subcontractor that he built a brick house on the premises for Ouletta Enterprises within view of the Marshall home without objection from the Marshalls. Here again the record fails to show the connection of Ouletta Enterprises with either party, and since there was ample evidence to sustain the chancellor's finding of adverse possession in favor of Mr. Marshall before Ouletta Enterprises entered the premises, we hold this contention to be without merit.

Nor can we find any merit in the allegation that the Marshalls were holding the land by mistake. When the evidence is viewed in its entirety, the clear preponderance thereof shows that it was considered part of premises owned by the Marshalls and their predecessors for more than thirty years; that it had been enclosed by a fence which also enclosed the farm owned by the Mar-

shalls and their predecessors; and that the Marshalls were definitely claiming that they owned the lands.

The photograph of which appellants complain is a U. S. Department of Agriculture conservation plan aerial photograph on a scale of eight inches to a mile. Before the chancellor permitted it to be introduced it was ascertained that it accurately showed a picture of the lands involved, the location of the Marshall home and the location of the highway about which many witnesses testified. We think it was properly introduced for these purposes.

Affirmed.